IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : CASE NO. 24-cr-00178 |
| v. | : |
| | : VIOLATIONS: |
| ANDREW VALENTIN | : 18 U.S.C. § 111(a) |
| | : (Assaulting, Resisting, or Impeding |
| Defendant. | : Certain Officers) |
| | : 18 U.S.C. § 111(a) and (b) |
| | : (Assaulting, Resisting, or Impeding |
| | : Certain Officers with a Deadly and |
| | : Dangerous Weapon) |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Andrew Valentin, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives

and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.      As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside. By shortly after 1:00 PM, the situation at the Capitol had become a civil disorder as that term is used in Title 18, United States Code, Section 231, and throughout the rest of the afternoon the civil disorder obstructed the Secret Service's ability to perform the federally protected function of protecting Vice President Pence.

5.      At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6.      At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP

attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

*The Defendant's Participation in the January 6, 2021, Capitol Riot*

8. The defendant traveled to Washington, DC, from Pennsylvania, with his brother, Matthew Valentin. Sometime before 2:14 PM, the defendant walked to the Capitol and went to the West Plaza where he climbed a media tower that had been erected on the West Plaza in advance of the 2021 Presidential inauguration.

9. The defendant climbed down from the media tower and joined a large crowd on the West Plaza where U.S. Capitol Police had formed a protective line behind bike rack barricades.

At approximately 2:29 PM, the defendant, along with the crowd, rushed the police line while rioters yelled "push push push." The defendant pushed a metal barricade into a line of Capitol Police Officers.

10. The defendant moved from the Lower West Terrace to the Upper West Terrace, arriving at the Upper West Terrace by at least 2:50 PM where a group of Metropolitan Police Officers, who were then assisting Capitol Police Officers, had formed a protective line. By early evening, officers had cleared rioters off the Upper West Terrace and the defendant returned to the West Plaza.

11. By at least 5:12 PM, a group of Montgomery County Police Officers, who were then assisting U.S. Capitol Police Officers, had formed a protective line in front of a set of stairs leading from the West Plaza to the Upper West Terrace. At approximately 5:12 PM, the defendant threw a folding chair at the line of officers, striking one officer's shield.

### *Elements of the Offense*

12. The parties agree that Count Two, assaulting resisting, or impeding certain officers using a dangerous violation, 18 U.S.C. § 111(a)(1), requires the following elements:

   a. First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with an officer from the U.S. Capitol Police;

   b. Second, the defendant did such acts forcibly;

   c. Third, the defendant did such acts voluntarily and intentionally; and

   d. Fourth, the person assaulted, resisted, opposed, impeded, intimidated, or interfered with was an officer or an employee of the United States who was then engaged in the performance of his official duties.

13. The parties agree that Count Two, assaulting resisting, or impeding certain officers using a dangerous violation, 18 U.S.C. § 111(a)(1) and (b), requires the following elements:

  e. First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with an officer from the Montgomery County Police Department;

  f. Second, the defendant did such acts forcibly;

  g. Third, the defendant did such acts voluntarily and intentionally;

  h. Fourth, the person assaulted, resisted, opposed, impeded, intimidated, or interfered with was assisting officers of the United States who were then engaged in the performance of their official duties;

  i. Fifth, in doing such acts, the defendant intentionally used a deadly or dangerous weapon.

*Defendant's Acknowledgments*

14. The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that he voluntarily, intentionally, and forcibly, assaulted a U.S. Capitol Police Officer at approximately 2:29 PM on January 6, 2021. The defendant also admits that the U.S. Capitol Police Officer was an officer of the United States who was then engaged in the performance of his official duties. The defendant also admits that he voluntarily, intentionally, and forcibly, assaulted a Montgomery County Police Officer at approximately 5:12 PM on January 6, 2021. The defendant further admits that he intentionally used a dangerous weapon, that is, a folding chair, during the assault. The defendant also admits that the Montgomery County Police Officer was assisting officers of the United States who were then engaged in the performance of their official duties.

          Respectfully submitted,

          MATTHEW M. GRAVES
          United States Attorney
          D.C. Bar No. 481052

By: *s/ Anna Krasinski*
   Anna Krasinski
   Assistant United States Attorney
   N.H. Bar No. 276778
   Capitol Siege Section
   U.S. Attorney's Office
   District of Columbia
   Telephone No: (603) 451-7851
   Email Address: anna.krasinski@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Andrew Valentin, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 9/17/24

_____
Andrew Valentin
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 9/17/24

_____
Thomas Sundmaker
Attorney for Defendant